UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Amy Julia Bligh, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Nicholas Anderson and Andrew Ruden, in their individual capacities as Minneapolis Police Officers, | **JURY TRIAL DEMANDED UNDER FRCP 38** |
| Defendants. | |

_____

For her Complaint, Amy Julia Bligh ("Bligh") states and alleges upon knowledge, information, and belief as follows:

1. This is an action for money damages due to Officer Nicholas Anderson ("Anderson") and Andrew Ruden ("Ruden")'s illegal actions. Anderson and Ruden's unreasonable seizure and use of excessive force, while acting under color of state law, violated Bligh's well-settled federal civil rights.

2. Bligh brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment to the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(a)(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of this matter to this Court.

3. Bligh was, at all material times herein, a citizen of the United States and a resident of Minneapolis, Minnesota.

4.      Anderson was, at all material times herein, a citizen of the United States and a resident of the State of Minnesota.

5.      Ruden was, at all material times herein, a citizen of the United States and a resident of the State of Minnesota.

6.      Anderson is sued in his individual capacity. He is a sworn officer in the Minneapolis Police Department.

7.      Ruden is sued in his individual capacity. He is a sworn officer in the Minneapolis Police Department.

8.      Bligh is a 46-year-old female licensed drug and alcohol counselor.

9.      The Minneapolis Police Department ("MPD") has a history of using excessive force to break up protests, which has prompted numerous settlements, including a very recent $600,000 settlement with 12 protestors injured at the George Floyd protests in 2020.

10.     On June 4, 2021, at around 6:30 p.m., Bligh was participating in a peaceful protest at the intersection of Lake Street and Hennepin Avenue in the wake of yet another law enforcement shooting of a young Black man, Winston Boogie Smith Jr., in Minneapolis.

11.     Bligh ordered approximately $300 worth of pizza and brought bottled water for protestors.

12.     Shortly after the pizza arrived, numerous Minneapolis Police Department ("MPD") Officers arrived with their bicycles.

13. The MPD officers lined up and began advancing towards the protestors, demanding they move back and physically moving them back.

14. Bligh was trying to gather her things, including water and pizza, but the officers moved too fast for her and got between her and the pizza and water.

15. As Bligh backed up, she asked officers if she could get her things that were now on the other side of the officers—but they ignored her requests and pushed her back.

16. Bligh complied and continued walking away from the officers.

17. Bligh turned to address the officers as she walked backwards. She made no threatening moves whatsoever.

18. Despite Bligh's clear lack of threat to the officers, both Anderson and Ruden pushed Bligh in the chest or upper arms causing her to topple backwards, fall down and strike her head hard, knocking her unconscious and leaving her bleeding in the street.

19. There was no need to physically push Bligh at all as she had committed no crime and was not a threat to the officers or others.

20. Both Anderson and Ruden failed to provide immediate aid to Bligh.

21. Other officers on scene eventually called an ambulance for Bligh and she was transported to HCMC.

22. Bligh was diagnosed with a laceration to her posterior scalp that required approximately 12 staples.

23. Bligh was noted to have a five-minute loss of consciousness and was further diagnosed with Traumatic Brain Injury ("TBI").

24. Her medical records state, "Given her significant nausea, vomiting and obvious TBI she will be admitted under the care of the trauma surgeons."

25. Bligh was kept in the hospital for two days and discharged from HCMC on June 6, 2021.

26. Bligh underwent numerous follow-up appointments at HCMC's TBI clinic with speech/occupational therapists and physical therapists, during which Bligh was diagnosed with a mild cognitive impairment affecting her memory.

27. Bligh incurred over $23,000 in medical bills relating to this incident.

28. Anderson and Ruden filed false and misleading police reports suggesting Bligh raised her right hand in a fist and somehow appeared threatening to them.

29. Despite the officers' trumped-up version of the event, no charges were brought against Bligh.

30. Defendants Anderson and Ruden, while acting under color of state law, violated Bligh's clearly established and well-settled federal civil rights to be free from excessive force and unreasonable seizure.

31. Defendants Anderson and Ruden subjected Bligh to this deprivation of her rights either maliciously or by acting with reckless disregard for whether her rights would be violated by their actions.

32. Defendants Anderson and Ruden's actions were also objectively unreasonable pursuant to *Graham v. Connor*, 490 U.S. 386 (1989).

33. Bligh had committed no crime.

34. Bligh posed no threat to the safety of Anderson and Ruden, herself, or others.

35. Bligh never actively resisted arrest or attempted to evade arrest by flight.

36. As a direct and proximate result of the acts and omissions of Anderson and Ruden, Bligh suffered great bodily and mental harm, medical bills, lost wages, and other items of damage in an amount to be determined by the jury.

37. Bligh claims punitive damages in an amount to be determined by the jury against defendants Anderson and Ruden as a matter of right under federal common law, *Smith v. Wade*, 461 U.S. 30 (1983).

38. Bligh is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## Prayer for Relief

WHEREFORE, Plaintiff Amy Julia Bligh prays for judgment against Defendants as follows:

1. A money judgment against Defendants Nicholas Anderson and Andrew Ruden for compensatory damages in an amount to be determined by the jury and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and prejudgment interest; and

2. For such further relief as this Court deems just and equitable.

                                                                   **NEWMARK STORMS DWORAK LLC**

Dated: January 12, 2023                s/ Ryan O. Vettleson
                                            Jeffrey S. Storms, MN #0387240
                                            Ryan O. Vettleson, MN #0312915
                                            222 South Ninth Street, #470
                                            Minneapolis, MN 55402
                                            Telephone: 612-455-7050
                                            jeff@newmarkstorms.com
                                            ryan@newmarkstorms.com

                                            ***Attorneys for Plaintiff***